**Slip-Op. 02-49**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |  |
|---|---|---|
| ORLEANS INTERNATIONAL, INC., | : | |
| Plaintiff, | : | |
| v. | : | **Consolidated Court No. 01-00576** |
| | : | **BEFORE:  CARMAN, CHIEF JUDGE** |
| UNITED STATES, | : | |
| Defendant. | : | |

[Defendant's motion to dismiss for lack of subject matter jurisdiction is granted.]

Date: June 3, 2002

*Barnes, Richardson & Colburn* (*Alan Goggins*), New York, N.Y., for Plaintiff.

*Robert D. McCallum, Jr.*, Assistant Attorney General of the United States; *John J. Mahon*, Acting Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Aimee Lee*, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Yelena Slepak*, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of Counsel; *Frank Martin*, Office of the General Counsel, U.S. Department of Agriculture, of Counsel, for Defendant.

**OPINION**

**CARMAN, CHIEF JUDGE:**  Defendant, United States, moves to dismiss this consolidated action[1] for lack of subject matter jurisdiction pursuant to USCIT R. 12(b)(1).  Plaintiff, Orleans

---

[1] *Pierce Trading International v. United States*, Court No. 01-00696 and *A.S.C.-Meyner Company v. United States*, Court No. 01-00611, two cases raising identical issues, were consolidated under *Orleans International, Inc. v. United States*, Consolidated Court No. 01-00576, pursuant to court order dated December 13, 2001.

International Inc. ("Orleans") opposes Defendant's motion, asserting this Court has subject

matter jurisdiction under 28 U.S.C. § 1581(i)(1), (2) and (4) (2000). For the reasons that follow,

this Court dismisses this action for lack of subject matter jurisdiction.


I. BACKGROUND

Orleans commenced the underlying action to challenge the constitutionality of

assessments applied to imports of beef and related beef products pursuant to the Beef Promotion

and Research Act of 1985 ("Beef Act"), 7 U.S.C. §§ 2901-11 (2000).[2] The Beef Act was enacted

by Congress because it was determined to be:

> in the public interest to authorize the establishment, through the exercise of the
> powers provided herein, of an orderly procedure for financing (through
> assessments on all cattle sold in the United States and on cattle, beef, and beef
> products imported into the United States) and carrying out a coordinated program
> of promotion and research designed to strengthen the beef industry's position in
> the marketplace and to maintain and expand domestic and foreign markets and
> uses for beef and beef products.

7 U.S.C. § 2901(b).

The Beef Act directs the Secretary of Agriculture to promulgate a Beef Promotion and

Research Order (the "Order"). *See* 7 U.S.C. § 2903. The Order established the Cattlemen's Beef

Promotion and Research Board (the "Board") and the Beef Promotion Operating Committee (the

"Operating Committee"). *See* 7 U.S.C. § 2904; 7 C.F.R. §§ 1260.141, 1260.161 (2001). The

---

[2] Orleans claims the beef assessments are unconstitutional for two reasons: (1) the assessments violate the Plaintiff's First Amendment rights to free speech and assembly, in a manner similar to the mushroom fee held unconstitutional in *United States v. United Foods, Inc.*, 121 S. Ct. 2334 (2001); and (2) the assessments constitute an unjust taking of its property under the Takings Clause of the Fifth Amendment to the Constitution.

Operating Committee develops "plans or projects of promotion and advertising, research, consumer information, and industry information, which [are] paid for with assessments collected by the Board." 7 U.S.C. § 2904(4)(B).

The assessments used to pay for these projects are collected on both domestic sales and imports. Domestic purchasers "making payment to a producer for cattle purchased from the producer [are required to] . . . collect an assessment and remit the assessment to the Board." 7 U.S.C. § 2904(8)(A). Importers "of cattle, beef, and beef products into the United States [are required to] pay an assessment to the Board through the U.S. Customs Service." 7 C.F.R. § 1260.172(b)(1). The rate of assessment is "one dollar ($1) per head of cattle" or "the equivalent thereof" for beef and beef products. 7 C.F.R. § 1260.172(a)(1), (2) & (b)(2).

Orleans has imported beef products into the United States from time to time since 1986 and has paid the assessments prescribed by the Beef Act upon its imports of beef products. Orleans timely instituted this action to contest the constitutionality of the beef assessments, pleading jurisdiction under 28 U.S.C. § 1581(i)(1), (2) & (4). Defendant subsequently moved to dismiss this action for lack of jurisdiction.

## II. DISCUSSION

### A.    Contents of the Parties

#### 1. *Defendant*

Defendant makes three principal arguments in support of its motion to dismiss for lack of jurisdiction. First, Defendant argues 28 U.S.C. § 1581(i)(1) is not applicable because this action

does not "arise out of any law of the United States providing for – (1) revenue from imports or tonnage." Defendant contends the purpose of the Beef Act is to regulate and strengthen the beef industry, not to raise revenue for the United States Treasury. The monies collected from the assessments are designed to pay for projects of promotion, advertising, research, consumer and industry information for the beef industry.

Second, Defendant contends the Court has no jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(4) because the Plaintiff is not complaining about Customs' "administration and enforcement with respect to the matters referred to in" the other subsections conferring jurisdiction on the Court. Here, Orleans is not contesting the collection of the assessment by Customs, but rather the constitutionality of the assessment itself. Therefore, Defendant asserts jurisdiction is not proper under this section.

Finally, Defendant contends jurisdiction is improper under 28 U.S.C. § 1581(i)(2). The United States argues that subsection (i)(2) creates two requirements that Plaintiff does not meet. First, the action must arise directly out of an import transaction or involve a matter of international trade law. Defendant argues this action does not arise directly out of import transactions because the Beef Act assessment is imposed equally on imports and domestic sales of beef. Thus, according to Defendant, the assessment is payable because of a transaction involving a sale of beef or beef products, not as a result of the importation of the merchandise. The United States argues further that the Beef Act is not an international trade law or a statute governing import transactions but rather an agricultural statute enacted to promote the beef industry. Defendant posits the statute's only connection to imports is that the assessment applies

both to domestic sales and imports.

Second, the Court of International Trade ("CIT") must have exclusive jurisdiction over the action. Defendant argues the Beef Act does "not involve questions of classification, valuation or rate of duty," matters over which the CIT does have exclusive jurisdiction. Therefore the Beef Act "should be treated the same whether a court is dealing with domestic or imported goods and more appropriately should come within the jurisdiction of the district courts." H.R. REP. NO. 96-1235, at 47-8 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3759. Additionally, Defendant points out that the Beef Act already vests the district courts with jurisdiction to enforce violations of the Beef Act, and the constitutionality of the Act has been addressed by the district court in earlier cases and is presently under consideration in two other district courts. Thus, if the CIT assumes jurisdiction because the assessments at issue here involve imports, the CIT must also assume jurisdiction over domestic sales for the jurisdiction to be exclusive. Finally, the United States argues that Congress' failure explicitly to grant jurisdiction to the CIT over this type of action (as it did in connection with the Harbor Maintenance Tax ("HMT")) means the CIT does not have exclusive jurisdiction over these cases.

### 2. *Plaintiff*

Plaintiff, Orleans, makes three principal arguments in support of its contention that the CIT possesses jurisdiction under 28 U.S.C. § 1581(i) to entertain this action. First, Plaintiff argues this action arises directly from an import transaction. Plaintiff posits that the assessment fees are identical to the duties, merchandise processing fees and harbor maintenance fees paid on the same import transaction. Further, Congress intended the CIT to have jurisdiction under §

1581(i) with regard to any civil action concerning any duty, tax, fee, interest or charge payable to Customs upon import. Thus, because the beef assessment fee is similar to fees considered Customs duties, Orleans contends the beef assessment fee should be treated as a Customs duty and subject to judicial review by the CIT. Plaintiff argues it is challenging the constitutionality of the beef assessment only as applied to Plaintiff's imports, not as applied to domestic sales. Therefore the question presented is directly related to the importation of merchandise and jurisdiction under § 1581(i) is proper.

Second, Plaintiff contends the CIT may claim exclusive jurisdiction over the constitutional challenge to the Beef Act in relation to imports. Orleans argues Defendant ignores that this action only concerns the Beef Act as applied to imports of beef and beef products, not as applied to domestic sales of beef and beef products – an issue currently pending in the district courts.

Plaintiff contends the plain language of 7 U.S.C. § 2908(b) grants jurisdiction to the district courts only for the enforcement and prevention of violations of the Act, not to review the constitutionality of the Act. Since there is no violation or enforcement issue here, Plaintiff argues the CIT may address the constitutionality of the Act as applied to imports.

Plaintiff, citing the Supreme Court decision in *K Mart Corporation v. Cartier*, 485 U.S. 176 (1988), argues that the district courts are divested of jurisdiction if an action falls within one of the specific grants of exclusive jurisdiction to the CIT. Here, Plaintiff claims because this action falls within the scope of § 1581(i) the CIT, not a district court, should have jurisdiction. To place jurisdiction over this matter in the district court would create the type of confusion that Congress sought to remedy when it enacted the Customs Court Act of 1980.

Plaintiff also refutes Defendant's argument that Congress could have explicitly granted the CIT jurisdiction as it did with respect to the HMT. Plaintiff argues that the language in the HMT Act was necessary to provide jurisdiction in the CIT with regard to several non-import aspects of the HMT.

Third, Plaintiff argues that if the Court decides jurisdiction properly resides in the district court, the appropriate remedy is to transfer the case to the district court rather than to dismiss the action.

B.      Analysis

*1. Jurisdiction*

When a defendant challenges the Court's jurisdiction, the plaintiff has the burden of establishing that jurisdiction exists. *See Lowa, Ltd. v. United States*, 561 F. Supp. 441, 443 (Ct. Int'l Trade 1983). The primary jurisdictional authority for the CIT resides in 28 U.S.C. § 1581(a)-(i). Plaintiff pleads jurisdiction under § 1581(i)(1), (2) and (4).[3]

---

[3] The residual jurisdictional provision of the Court, 28 U.S.C. § 1581(i), states in pertinent part:

> In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for–
>
> (1) revenue from imports or tonnage;
>
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

Because a fee payable upon importation is at issue, it might appear this Court would have jurisdiction over Plaintiff's claims. Nevertheless, Congress explicitly vested jurisdiction under the Beef Act with the district courts. *See* 7 U.S.C. § 2908(b). Furthermore this Court finds that it may not assume jurisdiction pursuant to § 1581(i) because such jurisdiction would not be exclusive.[4]

The Court finds its jurisdiction over this action would not be exclusive for two reasons. First, 7 U.S.C. § 2908(b) specifically vests the district courts with jurisdiction "to enforce, and to prevent and restrain a person from violating, an order or regulation made or issued" under the Beef Act. Plaintiff argues that 7 U.S.C. § 2908(b) provides the district court with jurisdiction

---

\* \* \*

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 or by a binational panel under article 1904 of the North American Free Trade Agreement or the United States-Canada Free-Trade Agreement and section 516A(g) of the Tariff Act of 1930.

[4] In its discussion of the Customs Court Act of 1980, Congress made it clear that once granted, jurisdiction over a specific action would be exclusive to the CIT:

Subsection (i) is intended only to confer subject matter jurisdiction upon the court, and not to create any new causes of action not founded on other provisions of law. . . . This provision makes it clear that all suits of the type specified are properly commenced *only* in the [CIT].

H.R. REP. NO. 96-1235, at 47 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3759 (emphasis added).

only to enforce the Beef Act, not to review the constitutionality of the Beef Act. This argument is illogical. In order for the courts to enforce a law, that law must be constitutional. Therefore, jurisdiction to enforce a law necessarily presumes the court's power to determine the law's constitutionality. The "jurisdictional conflict" that Plaintiff claims would arise if 7 U.S.C. § 2908(b) were read to create jurisdiction for this action in the district court would actually arise if two different courts were to have jurisdiction to review the constitutionality of the same act. There is no reason to presume Congress wanted to split jurisdiction, placing enforcement and collection actions in one court and importers' suits over the viability of the Beef Act in another.

Furthermore, the constitutionality of the Beef Act has already been considered by two district courts, *see Goetz v. Glickman*, 920 F. Supp. 1173 (D. Kan. 1996), *aff'd*, 149 F.3d 1131 (10ᵗʰ Cir. 1998), *cert. denied*, 525 U.S. 1102 (1999); *United States v. Frame*, 658 F. Supp. 1476 (E.D. Pa. 1987), *aff'd*, 885 F.2d 1119 (3ʳᵈ Cir. 1989), *cert. denied*, 493 U.S. 1094 (1990), and is currently under review by two additional district courts. *See Livestock Mktg. Ass'n, et al. v. USDA, et al.*, Court No. 00-1032 (D. S.D.); *Charter v. USDA*, Court No. 00-198-BLG-RFC (D. Mont.). Two separate Courts of Appeals' affirmances and the Supreme Court's denial of certiorari belie the notion that the district courts are an improper forum for these actions. This Court holds that it has no jurisdiction over this action under 28 U.S.C. § 1581(i).

### 2. Orleans' Request for Transfer to the District Court

Finally, the Court will address Orleans' request to transfer the case to the appropriate district court. Transfer for lack of jurisdiction is governed by 28 U.S.C. § 1631, which provides in pertinent part:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . . .

28 U.S.C. § 1631 (2000). The Supreme Court has stated that "[t]he statute confers on the [federal courts] authority to make a single decision upon concluding that it lacks jurisdiction – whether to dismiss the case or, 'in the interest of justice,' to transfer it to a court . . . that has jurisdiction." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988). There are two common reasons for transfer that meet the requirements of 28 U.S.C. § 1631: (1) a statute of limitations problem, and (2) deprivation of a forum. *See, e.g., AT, Inc. v. United States*, 24 F. Supp. 2d 399, 400 (M.D. Pa. 1998) (statute of limitations); *O'Neal v. Hatfield*, 921 F. Supp. 574, 576 (S.D. Ind. 1996) (same); *Old Republic Ins. Co. v. United States*, 741 F. Supp. 1570, 1576 (Ct. Int'l Trade 1990) (forum). Since there has been no allegation of a statute of limitations problem and the denial of the request to transfer will not deprive Plaintiff of a forum, the Court finds it is not "in the interest of justice" to transfer this case to the district court.

### III. Conclusion

For the reasons stated above, the Court grants Defendant's motion to dismiss this action

for lack of subject matter jurisdiction.


_____
Gregory W. Carman,
Chief Judge



Dated: June 3, 2002
      New York, New York