**ORLEANS INTERNATIONAL, INC., Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 03–1002.

United States Court of Appeals, Federal Circuit.

July 11, 2003.

</div>

Alan Goggins, Barnes, Richardson & Colburn, of New York, NY, argued for plaintiff-appellant. Of counsel on the brief was Kevin J. Sullivan.

Aimee Lee, Attorney, International Trade Field Office, Department of Justice, of New York, NY, argued for defendant-appellee. With her on the brief were David M. Cohen, Director, Civil Division, Commercial Litigation Branch, of Washington, DC; and John J. Mahon, Acting Attorney in Charge, International Trade Field Office. Of counsel on the brief was

Yelena Slepak, Attorney, Office of Assistant Chief Counsel, U.S. Customs Service, of New York, NY.

Before MAYER, Chief Judge, MICHEL and RADER, Circuit Judges.

Opinion for the court filed by Circuit Judge MICHEL. Dissenting opinion filed by Chief Judge MAYER.

MICHEL, Circuit Judge.

Plaintiff-appellant Orleans International, Inc. ("Orleans") appeals the order of the United States Court of International Trade dismissing for lack of subject matter jurisdiction Orleans' challenge of the constitutionality of import assessments mandated by the Beef Promotion and Research Act of 1985 ("Beef Act"), 7 U.S.C. §§ 2901–2911 (2000). *Orleans Int'l, Inc. v. United States*, 206 F.Supp.2d 1318 (Ct. Int'l Trade 2002). Because we hold that the Court of International Trade erred in holding that it did not have exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(2), we reverse and remand.

## BACKGROUND

The Beef Act aims to "carry[ ] out a coordinated program of promotion and research designed to strengthen the beef industry's position in the marketplace and to maintain and expand domestic and foreign markets and uses for beef and beef products." 7 U.S.C. § 2901(b). In furtherance of that goal, the Beef Act (and the regulations promulgated thereunder) mandates the collection of assessments on both domestic sales of cattle and imports of cattle, beef, and beef products. Domestic purchasers "making payment to a producer for cattle purchased from the producer [are required to] ... collect an assessment and remit the assessment to the Board." *Id.* § 2904(8)(A). Importers

"of cattle, beef, and beef products into the United States [are required to] pay an assessment to the Board through the U.S. Customs Service." 7 C.F.R. § 1260.172(b)(1).

Orleans commenced this suit in the United States Court of International Trade seeking a refund of assessments it had paid on importations of beef because, it argued, the Beef Act's assessments on its importation of beef and related products into the United States are unconstitutional. Orleans claims that the beef assessments violate its First Amendment rights to free speech and assembly, citing *United States v. United Foods*, 533 U.S. 405, 121 S.Ct. 2334, 150 L.Ed.2d 438 (2001). Orleans timely filed this action in the Court of International Trade and pled jurisdiction under 28 U.S.C. § 1581(i). The government subsequently moved to dismiss this action for lack of jurisdiction.

The Court of International Trade granted the government's motion to dismiss, holding that it did not have jurisdiction over the case because such jurisdiction would not be exclusive. *Orleans Int'l,* 206 F.Supp.2d at 1322–23. The court so held for two reasons:

> First, 7 U.S.C. § 2908(b) specifically vests the district courts with jurisdiction 'to enforce, and to prevent and restrain a person from violating, an order or regulation made or issued' under the Beef Act.... [J]urisdiction to enforce a law necessarily presumes the court's power to determine the law's constitutionality.... Furthermore, the constitutionality of the Beef Act has already been considered by two district courts and is currently under review by two additional district courts. Two separate Courts of Appeals' affirmances and the Supreme Court's denial of certiorari belie the notion that the district courts are an improper forum for these actions.

*Id.* (citations omitted).

On appeal, Orleans challenges the court's dismissal of its case, arguing that the court had subject matter jurisdiction

under 28 U.S.C. § 1581(i)(1), (2), and (4).[1] The government both supports the trial court's holding that jurisdiction would not be exclusive and argues that Orleans' action was otherwise outside the terms of 28 U.S.C. § 1581(i). We granted Orleans' petition for a permissive appeal and have jurisdiction pursuant to 28 U.S.C. § 1292(d)(1). We review the Court of International Trade's dismissal *de novo*. *JCM, Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed.Cir.2000).

## DISCUSSION

The Court of International Trade reached its holding that its jurisdiction over Orleans' action would not be exclusive by looking to the exercise of jurisdiction by district courts in other cases arising out of the Beef Act. *Orleans Int'l*, 206 F.Supp.2d at 1322. Orleans argues the court's approach was erroneous. We agree.

■■■ "[I]t is faulty analysis to look first to the jurisdiction of the district courts to determine whether the [Court of International Trade] has jurisdiction.... The focus must be solely on whether the claim falls within the language and intent of the jurisdiction grant to the [Court of International Trade]." *Vivitar Corp. v. United States*, 761 F.2d 1552, 1559–60 (Fed.Cir.1985); *see also K mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 182–83, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988) ("The District Court would be divested of jurisdiction, however, if this action fell within one of several specific grants of jurisdic-

tion to the Court of International Trade."). The correct approach, then, is to focus on whether the "civil action" at issue falls within the language of 28 U.S.C. § 1581(i). If the action does fall within that language, the Court of International Trade has exclusive jurisdiction. That is the jurisdictional scheme established by Congress. Section 1581(i) removes specific actions from the general federal-question jurisdiction of the district courts (under 28 U.S.C. § 1331) and places them in the jurisdiction of the Court of International Trade. Ergo, the district courts only have jurisdiction over an action if it does not fall within the specific grants in 28 U.S.C. § 1581(i). This makes sense, as to do otherwise "would negate the intent of Congress in granting *exclusive* jurisdiction over certain matters to the [Court of International Trade]." *Vivitar*, 761 F.2d at 1559 (emphasis in original).

The government argues that Orleans' action does not fall within the terms of § 1581(i)(1), (2), or (4) because a holding that the Court of International Trade has jurisdiction in this case would be contrary to the intent of Congress in promulgating those sections. The government's primary position in this regard is that the Beef Act is an agricultural statute rather than a statute affecting international trade. Orleans counters, arguing that the Beef Act has portions that are solely agricultural in nature and portions that bear on international trade. Again, we agree with Orleans.

---

**1.** 28 U.S.C. § 1581(i) states in pertinent part: In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any *civil action* commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage; (2) tariffs, duties, fees, or other taxes *on the importation of merchandise* for reasons other than the raising of revenue; * * * (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.
(emphases added).

■■■■ In addition to improperly focusing on the jurisdiction of the district courts, the Court of International Trade also erred in failing to distinguish between the different types of actions that could arise out of the Beef Act. The Beef Act applies to both domestic sales and imports of beef and beef products. Orleans' action here, however, specifically seeks a refund (and challenges the constitutionality) of assessments it paid on beef that is imported. The import fees are collected by Customs upon the import of beef or beef products, whether or not a sale takes place. *See* 7 U.S.C. § 2904(8)(C); 7 C.F.R. § 1260.172(b)(1). Thus, although the Act also applies to domestic sales, it quite clearly involves, by its very nature, international trade. That being the case, Orleans' action fits squarely within the language of § 1581(i)(2), stating that the Court of International Trade has jurisdiction over actions arising out of laws providing for "tariffs, duties, fees, or other taxes *on the importation of* merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(2) (emphasis added). We find no requirement in the law that a statute (as opposed to a specific cause of action) must be entirely involved with international trade for the Court of International Trade to have jurisdiction over any action brought under that statute. The appropriate label or category of a statute is irrelevant to the Court of International Trade's jurisdiction; the only thing that matters is whether the action falls within the express terms of § 1581(i).

Thus, under the proper framework, neither the district courts' exercise of jurisdiction over the actions arising from the imposition of domestic fees nor their exercise of jurisdiction over enforcement actions brought by the Attorney General under 7 U.S.C. § 2908(b) speaks to whether the Court of International Trade has jurisdiction over questions involving the Beef Act's imposition of fees on imports. The trial court was correct in noting that the district courts would have jurisdiction over government actions to enforce the Beef Act, pursuant to 7 U.S.C. § 2908(b), and disputes arising out of the Beef Board's imposition of fees on domestic sales of beef (which clearly do not involve international trade), as was the case in all of the decisions the trial court cited. *Orleans Int'l,* 206 F.Supp.2d at 1322. The trial court was also correct that given that jurisdiction, the district courts would also have jurisdiction over constitutional challenges corresponding to the above actions. *Id.* As we explain in greater detail below, however, that does not mean that the Court of International Trade would not have exclusive jurisdiction over a challenge to Customs' imposition of a fee on importations of beef products.

The district courts and the Court of International Trade can both have jurisdiction over actions arising out of the same act—it simply does not matter that there will be similar legal issues litigated in different courts. The government argues that Congress could not have intended such a result, but does not adequately explain why. Rather, it is apparent to us that Congress intended that very result. As we discussed above, the jurisdictional scheme here is based on the type of "action," not the type of issue a case presents. *See* 28 U.S.C. § 1581(i). There are several different types of actions that could arise out of the Beef Act. Congress in enacting 7 U.S.C. § 2908(b)[2] vested jurisdiction in

---

2. Section 2908(b) by its terms applies only to actions "to enforce, and to prevent and restrain a person from violating, an order or regulation made or issued under this Act." These are actions brought by the Attorney General. *Id.* § 2908(c) ("A civil action authorized to be brought under this section shall be referred to the Attorney General for appropriate action.").

the district courts for only one specific type of action arising out of the act— government-brought enforcement actions. Congress did not give the district courts jurisdiction over every type of action arising out of the Beef Act. Actions brought by private parties to recover the fees already imposed upon them are not government enforcement actions and therefore § 2908(b) has no application and cannot control which court has jurisdiction over them. Section 2908(b), then, is only a specific and limited grant of jurisdiction to the district courts.

The government also makes several secondary arguments supporting its position that a holding of jurisdiction in this case would be contrary to the intent of Congress. First, the government argues that Customs' role is only ministerial, involving only the collection of the fee. Customs' role here, however, is no different than its roles in collecting import duties and the Harbor Maintenance Tax ("HMT"). *See Thomson Consumer Elecs., Inc. v. United States*, 247 F.3d 1210, 1215 (Fed.Cir.2001) (holding that the Court of International Trade had jurisdiction under 28 U.S.C. § 1581(i) even where Customs "cannot do anything other than passively assess the HMT and collect it"). Second, the government argues that the legislative history of § 1581(i) supports a holding of no jurisdiction in this case. We, however, find nothing in the legislative history that clearly speaks to the issue before us. In any event, resort to the legislative history is unnecessary because the fee imposed here so clearly fits within the plain language of 28 U.S.C. § 1581(i)(2), granting the Court of International Trade jurisdiction over "any civil action ... arising out of any law of the United States providing for—(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," 28 U.S.C. § 1581(i)(2). *E.g., Van Wersch v. Dep't of Health & Human Servs.*, 197 F.3d 1144, 1152 (Fed.Cir.1999) ("[The language of the statute] is crystal clear. Under these circumstances, we are not prepared to allow the extant legislative history, which we have described above, to trump the irrefutably plain language that emerged when Congress actually took pen to paper.").

## CONCLUSION

In sum, we conclude that the Court of International Trade erred in holding that it did not have jurisdiction and hold that the court has exclusive jurisdiction over this import fee action pursuant to 28 U.S.C. § 1581(i)(2). We therefore reverse the trial court's grant of the government's motion to dismiss for lack of subject matter jurisdiction and remand for further proceedings.

*REVERSED AND REMANDED.*

MAYER, Chief Judge, dissenting.

Because I believe that the Beef Promotion and Research Act of 1985 ("Beef Act"), 7 U.S.C. §§ 2901–2911 (2000), is an agricultural statute enacted to benefit the commercial beef industry, I would affirm the Court of International Trade's judgment that it lacks subject matter jurisdiction over this case.

The Beef Act provides a means to fund, inter alia, projects for beef promotion and research, the generation of consumer and industry information, and the improvement and expansion of beef marketing. *Id.* § 2901(b); 7 C.F.R. § 1260.169(a), (b) (2002). The statute describes a collection system whereby the domestic sale of cattle triggers an assessment. 7 U.S.C. § 2904(8)(A). One dollar per head of cattle sold is levied, and because cattle are not usually imported into the United

States, but arrive as beef or beef products, an equivalent assessment for imports is calculated by weight. *Id.* § 2904(8)(C); 7 C.F.R. § 1260.172(b)(2). Thus each commercial sale of beef in the United States, both domestic and imported, is assessed and the proceeds are remitted to the Cattlemen's Beef Promotion and Research Board to dispense pursuant to the statute. 7 U.S.C. § 2904(8); 7 C.F.R. § 1260.172. At issue is the proper forum to review the constitutionality of the sale assessment, not an import tariff, duty, or fee.

I disagree with the court that the Beef Act as applied to imports mandates the exclusive jurisdiction of the Court of International Trade under its residual jurisdiction. The court premises its reasoning that jurisdiction lies under 28 U.S.C. § 1581(i)(2) on the word "importation" in the statute. *See* 28 U.S.C. § 1581(i)(2) (2000) (jurisdiction conferred over civil actions arising out of "any law of the United States providing for—(2) tariffs, duties, fees, or other taxes on the *importation* of merchandise for reasons other than the raising of revenue." (emphasis added)). Not all import transactions are reviewable by the Court of International Trade. *See K mart Corp. v. Cartier, Inc.,* 485 U.S. 176, 182, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988) (district court has jurisdiction to review Secretary of the Treasury's regulation allowing the importation of gray-market goods). But here, the court concludes that the Beef Act with respect to imports is an international trade law because it is not the sale of beef which triggers the assessment, but its importation. I find nothing

in the statute or regulations, however, to suggest that the Beef Act would apply outside the commercial realm. *See, e.g.,* 7 C.F.R. § 1260.314 (listing persons exempted from the assessment if they did not sufficiently profit from the transfer of cattle). And the case before us involves beef imported for domestic sale.

Under my reading of the Beef Act, Congress vested jurisdiction in the district courts to hear cases such as this one in 7 U.S.C. § 2908(b): "The district courts of the United States are vested with jurisdiction specifically to enforce, and to prevent and restrain a person from violating, an order or regulation made or issued under this chapter." The court's conclusion that this subsection does not encompass private actions for refunds because they are not "enforcement actions" is belied by the statutory language itself. A private action to collect a refund from the Board falls squarely within the bounds of enforcement. *See* 7 U.S.C. § 2907(c) ("[A]ny person shall have the right to demand and receive from the Board a one-time refund of all assessments collected under section 2906 of this title . . ."). And reason dictates that if the district court is directed to enforce the orders and regulations promulgated under the statute, for refunds or otherwise, it must also decide whether the statute is constitutional. Accordingly, I respectfully dissent.