Slip Op. 06-56

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

—————————————————————————

|  |  |  |
|---|---|---|
| CRICKET HOSIERY, INC., THE WILLIAM CARTER CO., and ARTEX INTERNATIONAL, INC., and on behalf of all others similarly situated, | : : : : : | |
| Plaintiffs, | : : : | |
| v. | : : | |
| UNITED STATES, | : : | |
| Defendant, | : : | **Before: MUSGRAVE, Judge** |
| and | : : : | Court No. 03-00553 |
| F.T.B. FARMS, WILLIAM LOVELADY, ROBERT E. MCLENDON FARMS LLC, A-TUMBLIN-T RANCHES, CALIFORNIA COTTON GROWERS ASSOCIATION, DELTA COUNCIL, SOUTHERN COTTON GROWERS, INC., and TEXAS COTTON PRODUCERS, INC., | : : : : : : : : : : | |
| Defendant-Intervenors. | : | |

—————————————————————————

[Plaintiffs commenced action alleging that the Cotton Research and Promotion Act of 1966 ("Act") violated their constitutional Free Speech, Free Association, and Due Process rights. The Court held that plaintiffs: (1) did not state a claim upon which relief could be granted as to their facial First Amendment challenge to the Act because the Court was constrained to follow the Supreme Court's reasoning in *Livestock Marketing*; (2) did not state a claim upon which relief could be granted as to their as-applied Free Speech challenge to the Act because, while the Supreme Court in *Livestock Marketing* left open the possibility that an individual might be able to prove that a "generic promotional message" created pursuant to an agricultural marketing program could be attributed to that individual, in the case at bar no such claim was specifically asserted; (3) did not state a claim upon which relief could be granted as to their facial Free Association challenge to the Act as neither the Act nor the Cotton Order required plaintiffs to associate with their "competitors"; (4) did not state a claim upon which relief could be granted as to their Due Process challenge to the Act as that claim was time-barred.]

Decided : April 24, 2006

*The Cullen Law Firm PLLC* (*Paul D. Cullen, Sr.* and *Joseph A. Black*); *James A. Moody*, of counsel; and *Greenburg Traurig LLP* (*Teresa M. Polino*), for the plaintiffs.

*Peter D. Keisler*, Assistant Attorney General, *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Aimee Lee*); Office of the General Counsel, United States Department of Agriculture (*Frank Martin*), of counsel; Office of the Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection (*Yelena Slepak*), of counsel, for the defendant.

*Wilmer Cutler Pickering Hale and Dorr LLP* (*Randolph D. Moss*, *David W. Ogden*, *Brian M. Boynton*, and *Leondra R. Kruger*), for the defendant-intervenors.

**OPINION**

Before the Court are defendant's Motion to Dismiss and Motion for Judgment on the Agency Record and defendant-intervenors' Motion to Dismiss or, in the Alternative, for Judgment on the Agency Record. By their motions these parties seek the dismissal of plaintiffs' Amended Class Action Complaint ("Amended Complaint") in its entirety. The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1581(i) (2000). *See Cricket Hosiery, Inc. v. United States*, 26 CIT __, Slip Op. 04-72 (2004) ("*Cricket I*") (denying defendant's motion to dismiss for lack of subject matter jurisdiction); *Orleans Int'l, Inc. v. United States*, 334 F.3d 1375 (Fed. Cir. 2003) ("*Orleans*") (finding that the United States Court of International Trade had exclusive jurisdiction over domestic producers' challenge to the constitutionality of the collection of assessments pursuant to the Beef Marketing and Promotion Act).

*Background*

On August 18, 2003, plaintiffs, domestic importers of cotton and cotton products, commenced this action alleging that the Cotton Research and Promotion Act of 1966, *as amended*,

7 U.S.C. § 2101 *et seq*. (2000) ("Cotton Act"), and the regulations implementing the Cotton Act, 7 C.F.R. § 1205 *et seq*. (2003) ("Cotton Order"), violated their constitutional rights. Specifically, plaintiffs alleged that the Cotton Act violated their rights of Free Speech and Free Association. *See* Compl. at paras. 28, 30. In May 2004 the Court stayed this action pending the Supreme Court's resolution of *Johanns v. Livestock Marketing Association*. *See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 125 S. Ct. 2055, 161 L. Ed. 2d 896 (2005) ("*Livestock Mktg. III*"). That action, which was initially commenced in the Northern District of South Dakota, was brought by several members of the domestic beef and cattle industries who challenged, on constitutional grounds, the Beef Promotion and Research Act of 1985, *as amended* , 7 U.S.C. § 2901 *et seq*. (2000) (the "Beef Act"). *See Livestock Mktg. Ass'n v. United States Dep't of Agric.*, 207 F. Supp. 2d 992, 996–997 (N.D.S.D. 2002) ("*Livestock Mktg. I*"), *vacated by*, 544 U.S. 550. The plaintiffs in *Livestock Marketing I* raised constitutional challenges to the Beef Act, arguing that the promotional messages created pursuant to that Act violated their rights of Free Speech and Free Association. The plaintiffs found the promotional messages to be objectionable for various reasons including that "generic promotion of beef serves to promote imported beef," that "generic advertising increases foreign imports which hurts . . . business," that "generic advertising . . . implies beef is all the same," and that any messages of the Beef Act should promote only American beef. *See id*. at 997. The district court, relying on the Supreme Court's Free Speech jurisprudence, found that the assessments paid by the plaintiffs to fund the Beef Board were akin to "dues" paid to a union shop or a state bar association. *See id*. at 997–98 (citing *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 233 (1977) ("*Abood*"); *Keller v. State Bar of Ca.*, 496 U.S. 1, 13 (1990) ("*Keller*")). The district court reasoned, that

the use of compelled "dues" for advancing ideological causes objectionable to any member of the group violates the First Amendment. Compelling plaintiffs to make contributions for speech to which they object works an infringement of their constitutional rights. *Abood*, 431 U.S. at 234.

> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.

*Abood*, 431 U.S. at 235 (quoting *West Va. Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943)). The First Amendment protects not only the right to engage in or not engage in political speech but also any "expression about philosophical, social, artistic, economic, literary, or ethical matters." *Abood*, 431 U.S. at 231. *See also NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958) ("it is immaterial whether the beliefs sought to be advanced . . . pertain to political, economic, religious or cultural matters").

*Livestock Mktg. I*, 207 F. Supp. 2d at 998. The district court then reviewed the Supreme Court's decision in *United States v. United Foods*. *See id*. at 1000 (citing *United States v. United Foods, Inc.*, 533 U.S. 405 (2001) ("*United Foods*")). In *United Foods*, the Supreme Court found that the collection of assessments from domestic producers of mushrooms to fund a board that created promotional messages pursuant to the Mushroom Promotion, Research, and Consumer Information Act, *as amended*, 7 U.S.C. § 6101 *et seq*., which the plaintiffs found to be objectionable, unconstitutionally violated their First Amendment rights. *See United Foods*, 533 U.S. at 415–16. Following the Supreme Court's lead in *United Foods*, the district court found that the collection of assessments from domestic producers of beef and beef products to fund a board that created

promotional messages pursuant to the Beef Act, which the plaintiffs found to be objectionable, unconstitutionally violated their First Amendment rights.  The district court reasoned that

> [t]he beef checkoff is unconstitutional in violation of the First Amendment because it requires plaintiffs to pay, in part, for speech to which the plaintiffs object.  The Constitution requires that expenditures for advertising of beef be financed only from assessments paid by producers who do not object to advancing the generic sale of beef and who are not coerced into doing so against their wills.

*Livestock Mktg. I*, 207 F. Supp. 2d at 1002 (citing *Abood*, 431 U.S. at 236–237).  In reaching its conclusion the district court specifically rejected the arguments of the defendant and the defendant-intervenors that the speech did not infringe upon the plaintiffs' First Amendment rights because it was "government speech." *See id*. at 1003–07.  The district court, relying on *United States v. Frame*, stated that "[t]he Third Circuit rejected the government's contention that the compelled expressive activities mandated by the Act constitute 'government speech' . . . ." *Id*. at 1004 (citing *United States v. Frame*, 885 F.2d 1119, 1132 (3rd Cir. 1989)).

That action was then appealed to the Court of Appeals for the Eighth Circuit.  In contrast to the district court, the court of appeals found that the speech complained of was, indeed, government speech. *See Livestock Mktg. Ass'n v. United States Dep't of Agric.*, 335 F.3d 711, 719–26 (8th Cir. 2003) ("*Livestock Mktg. II*"), *vacated by*, *remanded by*, 544 U.S. 550 ("The government speech doctrine has firm roots in our system of jurisprudence.").  The court of appeals noted that, since the district court had not found that the speech complained of was government speech, the district court had not applied the test set out in *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York* to determine whether such speech survived heightened First Amendment

scrutiny. *See id*. at 722 (citing *Central Hudson Gas & Elec. Corp. v. Public Svc. Comm'n of NY*, 447

U.S. 557, 570–71 (1980) ("*Central Hudson*"); *Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S.

457, 470 (1997) ("*Glickman*")).  The court of appeals, applying the *Central Hudson* test, found that

the speech did not survive heightened scrutiny because

> notwithstanding the reasoned counterpoints advanced by the dissent
> in *United Foods*, *see* 533 U.S. at 419–31 (Breyer, J., dissenting), we
> conclude that the government's interest in protecting the welfare of
> the beef industry by compelling all beef producers and importers to
> pay for generic beef advertising is not sufficiently substantial to
> justify the infringement on appellees' First Amendment free speech
> right.  Accordingly, the district court did not err in holding that the
> Beef Act and the Beef Order are unconstitutional and unenforceable.

*Id*. at 725–26.

The matter was again appealed and the Supreme Court granted certiorari.  *See Nebraska*

*Cattlemen, Inc., v. Livestock Mktg. Ass'n*, 541 U.S. 1062 (2004).  The Supreme Court found that,

in general, because the speech complained of was government speech it did not infringe upon the

respondents' First Amendment rights. *Livestock Mktg. III*, 544 U.S. at __, 125 S. Ct. at 2062, 161

L. Ed. 2d at 906.  The Supreme Court reasoned this was so because "[t]he message set out in the beef

promotions is from beginning to end the message established by the Federal Government."  *See id.*

at __, 125 S. Ct. at 2062, 161 L. Ed. 2d at 907.  While the Supreme Court found that the speech

complained of did not infringe upon the individual respondents' constitutional rights, in *dicta* the

Court raised the possibility that such speech might be unconstitutional if, as-applied, "it were

established . . . that individual . . . advertisements were attributable to respondents."  *Id.* at __, 125

S. Ct. at 2065, 161 L. Ed. 2d at 910.  The Supreme Court did not reach this issue, however, stating

that it was "a question on which the trial record is silent."  *Id.*

After the Supreme Court issued its decision in *Livestock Marketing III*, plaintiffs in the case at bar amended their Complaint to include a Due Process claim and a claim that the Cotton Act, as-applied, violated their right to Free Speech. *See* Am. Compl. at paras. 32, 34. Defendant and defendant-intervenors then filed the motions now before the Court.

### *Standard of Review*[1]

As stated by this Court: "On a motion to dismiss for failure to state a claim pursuant to USCIT Rule 12(b)(5), the Defendant is entitled to dismissal where, after accepting Plaintiff's factual allegations in its complaint and drawing all inferences in favor of Plaintiff, it appears beyond doubt that no set of facts can be proven that would entitle Plaintiff to relief." *Nufarm Am.'s, Inc. v. United States*, 29 CIT __, __, 398 F. Supp. 2d 1338, 1342 (2005) ("*Nufarm*") (citing *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1565 (Fed. Cir. 1988); *United States v. Ford Motor Co.*, 29 CIT __, __, Slip Op. 05-24 at 5 (Feb. 18, 2005); *Kemet Elecs. Corp. v. Barshefsky*, 21 CIT 912, 929, 976 F. Supp. 1012, 1027 (1997)).

---

[1] Defendant and defendant-intervenors aver that portions of their motions could be treated as for judgment on an agency record. The Court, however, finds its analysis to be better premised on USCIT Rule 12(b)(5) since, as admitted by defendant, there was no administrative proceeding underlying this action. *See* Def.'s Reply Mem. in Supp. of Its Mot. to Dismiss and Mot. for J. on the Agency R. of the Counts in Pls.' First Am. Class Action Compl. at 1 (stating that there was no "administrative proceeding in this case pursuant to section 2111 of the Cotton Act . . . .").

*Discussion*

I

A

By Count One of their Amended Complaint plaintiffs allege that the collection of assessments pursuant to the Cotton Act is unconstitutional because the activities of the Cotton Board violate their First Amendment right of Free Speech. Specifically, plaintiffs allege that

> [t]he speech tax imposed under the Cotton Act ([]7 U.S.C. § 2106(e)(4)) and Order (7 C.F.R. § 1205.510) violates the rights of Plaintiffs to free speech guaranteed by the First Amendment to the Constitution. First, there is no substantial or compelling governmental interest in mandating the collective advertising, promotion, research and educational programs funded by mandatory taxes imposed on Plaintiffs. Second, even if the Secretary of Agriculture can establish the legitimacy of the government's interest, there is no [sic] empirical nor hard evidence that the government interest is real, as opposed to imaginary, factually based as opposed to based on special interest lobbying and therefore theoretical, or based upon minor as opposed to major concerns. There is no evidence that the Plaintiffs are ill-equipped privately to promote and advertise their products and services without the forced taxes to support the programs and messages complained of herein. The Act and Order are more restrictive than necessary because no credit is given for the promotion undertaken by individual importers, the taxes of Plaintiffs are used to support products and services not marketed by them and/or to segments of the industry and the consuming public outside their scope. Plaintiffs do not agree with and do not wish to support the programs' messages (and its research), especially the message that cotton products are generic and homogeneous, do not agree with the government's preference for generic promotion over the individual and unique efforts of each firm, and do not agree with the section[2] of the messenger.

---

[2]        Probably "selection"

Am. Compl. at para. 28.  The question for the Court, then, is whether plaintiffs have alleged

sufficient facts such that they can be granted the relief requested.  *Nufarm*, 29 CIT at __, 398 F.

Supp. 2d at 1342.  To answer this question, the Court is constrained to turn to Supreme Court's

reasoning in *Livestock Marketing III*.[3]

In *Livestock Marketing III*, the Supreme Court found that the messages created pursuant to

the Beef Act did not, in general, infringe upon the respondents' First Amendment rights.  The

Supreme Court began its analysis by stating that

> [w]e have sustained First Amendment challenges to allegedly
> compelled expression in two categories of cases: true "compelled
> speech" cases, in which an individual is obliged personally to express
> a message he disagrees with, imposed by the government; and
> "compelled subsidy" cases, in which an individual is required by the
> government to subsidize a message he disagrees with, expressed by
> a private entity. We have not heretofore considered the First

---

[3]     The Court notes that it has been brought to its attention that the United States District Court for the District of Columbia recently issued an opinion that addresses the issues now before this Court.  *See Avocados Plus v. United States*, 2006 U.S. Dist. LEXIS 10144, 2006 WL 637108 (D.D.C. Mar. 15, 2006) ("*Avocados*").  The Court finds that—notwithstanding the district court's thorough analysis in that matter—it cannot rely upon that opinion.  The Court finds this to be so because both this Court and the Court of Appeals for the Federal Circuit have found that the Court of International Trade possesses exclusive jurisdiction over matters related to the collection of assessments by Customs pursuant to agricultural marketing programs.  *See Cricket I*, 26 CIT __, Slip Op. 04-72; *Orleans*, 334 F.3d 1375; *see also C.H. Robinson Int'l v. United States*, 64 Fed. Cl. 651, 654–55 (2005) ("The correct approach to determining whether jurisdiction lies in the Court of Federal Claims or the Court of International Trade is to focus on whether the claim falls within the language of 28 U.S.C. § 1581(i).  Because the jurisdiction of the Court of International Trade is exclusive in nature, this Court will have jurisdiction *only if the action does not fall within the specific grants in 28 U.S.C. § 1581*." (citation omitted; italics added)).  The Avocado Act specifically requires Customs to collect assessments from importers of avocados.  *See* 7 U.S.C. § 7804(h)(1)(C)(iii) ("The assessment on imported Hass avocados shall be paid by the importer to Customs at the time of entry into the United States . . . .").  Simply stated, because the opinion of the district court may be based on a case of unsettled jurisdiction, this Court can not now rely upon that opinion.

> Amendment consequences of government-compelled subsidy of the
> government's own speech.

*Livestock Mktg. III*, 544 U.S. at __, 125 S. Ct. at 2060, 161 L. Ed. 2d at 905. The Court then

reviewed its Free Speech jurisprudence. *See id.* at __–__, 125 S. Ct. at 2060–2063, 161 L. Ed. 2d

at 905–907 (citing *West Va. Bd. of Ed. v. Barnette*, 319 U.S. 624 (1943); *Wooley v. Maynard*, 430

U.S. 705 (1977); *Keller*, 496 U.S. 1; *Abood*, 431 U.S. 209; *United Foods*, 533 U.S. 405; *Glickman*,

521 U.S. 457; *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217 (2000); *Rosenberger*

*v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819 (1995)). Finally, the Supreme Court stated:

> In all of the cases invalidating exactions to subsidize speech, the
> speech was, or was presumed to be, that of an entity other than the
> government itself. Our compelled-subsidy cases have consistently
> respected the principle that "compelled support of a private
> association is fundamentally different from compelled support of
> government." "Compelled support of government"—even those
> programs of government one does not approve—is of course perfectly
> constitutional, as every taxpayer must attest. And some government
> programs involve, or entirely consist of, advocating a position. "The
> government, as a general rule, may support valid programs and
> policies by taxes or other exactions binding on protesting parties.
> Within this broader principle it seems inevitable that funds raised by
> the government will be spent for speech and other expression to
> advocate and defend its own policies." We have generally assumed,
> though not yet squarely held, that compelled funding of government
> speech does not alone raise First Amendment concerns.

*Id.*, 544 U.S. at __, 125 S. Ct. at 2062, 161 L. Ed. 2d at 906 (citations omitted). The Supreme Court,

noting that the respondents "do not seriously dispute these principles, nor do they contend that, as

a general matter, their First Amendment challenge requires them to show only that their checkoff

dollars pay for speech with which they disagree," *id*. at __, 125 S. Ct. at 2062, 161 L. Ed. 2d at

906–07, addressed the respondents' arguments "that the challenged promotional campaigns differ

dispositively from the type of government speech that, our cases suggest, is not susceptible to First Amendment challenge." *Id*. at __, 125 S. Ct. at 2062, 161 L. Ed. 2d at 907. The Supreme Court stated that the respondents "point to the role of the Beef Board and its Operating Committee in designing the promotional campaigns, and to the use of mandatory assessments on beef producers to fund the advertising." *Id*. As to the first part of respondent's argument, the Supreme Court found the status of the Beef Board, which the respondents argued was a "non-governmental" agency, was not relevant to its analysis because "[t]he message of the promotional campaigns is effectively controlled by the Federal Government itself." *Id*. In arriving at this conclusion the Supreme Court examined the Act and found that the speech complained of was government speech because "[t]he message set out in the beef promotions is from beginning to end the message established by the Federal Government." *Id*.

The action now before this Court presents a nearly identical situation to that in the *Livestock Marketing* line of cases in that plaintiffs, by Count One of their Amended Complaint, are alleging that the messages created pursuant to the Cotton Act infringe upon their First Amendment rights. *See* Am. Compl. at para. 28. Plaintiffs state that this is a "facial challenge" to the statute. *See* Pls.' Opp'n to Def.'s and Def.-Intervenors' Mots. to Dismiss and Mots. for J. on the Agency R. ("Pls.' Resp.") at 13 (captioning argument section as "The Speech Tax is Unconstitutional on its Face as a Violation of the Right to Free Speech"). As stated by the Supreme Court, "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Rust v. Sullivan*, 500 U.S. 173, 183 (1991)

(citing *Salerno*, 481 U.S. at 745, and stating "we are concerned only with the question whether, on their face, the regulations are both authorized by the Act and can be construed in such a manner that they can be applied to *a set of individuals* without infringing upon constitutionally protected rights. Petitioners face a heavy burden in seeking to have the regulations invalidated as facially unconstitutional." (emphasis added)).

Plaintiffs present several arguments in support of their position that the Cotton Act facially infringes upon their First Amendment rights. Plaintiffs argue that "[t]he legality of generic advertising programs for agricultural commodities is far from settled." Pls.' Mem. at 14. Plaintiffs characterize the Supreme Court's holding in *Livestock Marketing III* as "a last-minute counter-factual contrivance to save the dozen federal programs and dozens of state programs from certain defeat." *Id*.[4] Plaintiffs contend the Supreme Court's decision in *United Foods* "set forth the rule that it is unconstitutional to force dissenters to support a messenger and fund a message with which they disagree or which they simply choose not to support. Adding a layer of government oversight and approval, i.e. censorship, cannot magically transform such a program into one that will pass constitutional muster." *Id*. at 15. Finally, plaintiffs argue that "[t]he assumption underlying the targeted funding mechanism, that the democratic process will properly protect First Amendment concerns, is even more untenable. The reason for the Bill of Rights in the first place was *precisely* to protect these rights from relegation to the democratic process." *Id*. at 16 (footnote omitted, emphasis in original).

---

[4]     This is a position with which this Court has no disagreement; the Supreme Court, however, having spoken definitively on this issue, this Court is now compelled to conform its analysis to that in *Livestock Marketing III*.

The Court is constrained to find that plaintiffs' allegations contained in Count One of their Amended Complaint are precluded by the Supreme Court's holding in *Livestock Marketing III*. As the starting point, it is necessary to determine whether the speech created pursuant to the Cotton Act is, in fact, government speech, and the Court must find that it is, notwithstanding the well-reasoned opinions of both the trial and appellate courts in the *Livestock Marketing* line of cases. A comparison of the Beef Act and the Cotton Act shows that the Cotton Act contains statutory elements that are virtually identical to those the Supreme Court found dispositive of this issue in *Livestock Marketing III*. *See* 544 U.S. at __, 125 S. Ct. at 2058–59, 161 L. Ed. 2d at 902–03. First, Congress has directed that there be a "coordinated program of research and promotion" of cotton and cotton products, including "[p]roviding for the establishment, issuance, effectuation, and administration of appropriate plans or projects for the advertising and sales promotion of cotton and its products . . . ." 7 U.S.C. § 2101, 2105(a). Next, the Cotton Act outlines the type of content that may be permissibly included in any promotional messages created pursuant to it, *see* 7 U.S.C. § 2105(a) ("[A]ny such plan or project shall be directed toward increasing the general demand for cotton or its products . . . ."), and the type of content that may not be permissibly included in any such messages. *Id.* ("[B]ut no reference to a private brand or trade name shall be made if the Secretary determines that such reference will result in undue discrimination against the cotton products of other persons . . . ."). Finally, all messages created pursuant to the Cotton Act are subject to direct government oversight by the Secretary of Agriculture. *See* 7 U.S.C. § 1206(c) ("[T]he Cotton Board shall . . . develop and submit to the Secretary for his approval any advertising or sales promotion or research and development plans or projects, and that any such plan or project must be

approved by the Secretary before becoming effective."). Indeed, as found by the Supreme Court in its examination of the Beef Act, the speech in the Cotton Act "is from beginning to end the message established by the Federal Government." *Livestock Mktg. III*, 544 U.S. at __, 125 S. Ct. at 2062, 161 L. Ed. 2d at 907. Therefore, because the Supreme Court has squarely held that, without more, generic messages created pursuant to an agriculture marketing program do not implicate an individual's Free Speech rights (even where an individual disagrees with that speech) because that speech is the government's own, *id.*, and because the speech complained of in this action is government speech (even though the speech is not clearly attributable to that messenger), *see id.*, this Court is constrained to find that plaintiffs have not adequately "establish[ed] that no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745. Therefore, because plaintiffs' facial challenge to the Cotton Act fails, the Court finds that "it appears beyond doubt that no set of facts can be proven that would entitle Plaintiff to relief," *Nufarm*, 29 CIT at __, 398 F. Supp. 2d at 1342, and dismisses Count One of the Amended Complaint.

B

By Count Three of their Amended Complaint, plaintiffs allege an as-applied challenge to the Cotton Act. Plaintiffs allege that

> [t]he Act and regulations, and taxes imposed thereunder as applied to Plaintiffs violates their right to freedom from compelled or subsidized speech protected by the First Amendment to the Constitution. The Cotton Board retains a sole source contractor, Cotton Incorporated, to carry out the research and promotion activities authorized by the Act. Cotton Inc. expressly represents the interests of producers and importers, including Plaintiffs. Cotton, Inc.'s marketing and promotion activities include, *inter alia*, television advertising . . . , retail promotions . . . , newsletters . . . , trade advertising . . . , trade shows, and industry outreach and educational activities. All of

> Cotton, Inc.'s activities (allegedly on behalf of Plaintiffs) feature the corporate name and the corporate logo, the Seal of Cotton. USDA uses this mechanism to attribute what is allegedly a government message to Plaintiffs. Plaintiffs are also associated with Cotton Inc.'s speech (including research) by virtue of the assessments they pay on imports.

Am. Compl. at para. 32. Plaintiffs argue that they have sufficiently alleged a claim upon which relief may be granted because "Count Three alleges that the program attributes the alleged message of the Government to Plaintiffs thereby negating the government speech defense." Pls.' Resp. at 6 (citing Am. Comp. at para. 32). Plaintiffs present several arguments in support of their position. First, plaintiffs argue that "further factual development" is needed in this case in order to determine whether messages created pursuant to the Cotton Act "would be associated with" individual cotton importers. *Id*. at 10 (quoting *Livestock Mktg. III*, 544 U.S. at __, 125 S. Ct. at 2065–66, 161 L. Ed. 2d at 910.). Next, plaintiffs contend that, while they

> do not claim that the mere existence of Cotton, Inc. and the use of the Seal of Cotton by themselves prove and as-applied challenge . . . these are simply some of the mechanisms by which the Government's speech is associated with and attributed to Plaintiffs. Following discovery, Plaintiffs will be able to demonstrate . . . that the "government" messages are attributed to them . . . .

*Id*. at 11. Next, plaintiffs argue that "[c]ontrary to the Government's argument . . . there is no requirement that Plaintiffs prove attribution of any specific message to any specific Plaintiff in an as-applied challenge." *Id*. Finally, plaintiffs argue that "[e]ven if the cotton speech tax could be sustained as a permissible means of funding government speech in some theoretical sense, the facts of this case demonstrate that the Government is not identified as the speaker." *Id*. at 13. Plaintiffs

contend that "[t]he government should be required to prove that recipients of the cotton messages understand they come from the government." *Id*.

A review of Count Three shows that plaintiffs raise two separate allegations. First, plaintiffs allege that the promotional messages created pursuant to the Cotton Act violate their constitutional rights because those messages can be directly attributed to them. Plaintiffs' second allegation, which is directly related to the first, is that because those promotional messages violate their constitutional rights, the funding of those messages via targeted assessments is unconstitutional. The Court begins its analysis with plaintiffs' first allegation.

The Court understands the first part of plaintiffs' as-applied challenge to be the following: plaintiffs consider certain messages created pursuant to the Cotton Act to be offensive to them; that those offensive messages can be directly attributed to them; and, therefore, that because those offensive messages can be directly attributed to them they are thus compelled to speak those offensive messages in violation of their First Amendment rights. A plain reading of the Amended Complaint shows that the plaintiffs allege that the "messages" they find offensive to them are the existence of Cotton, Inc. and the Seal of Cotton. The Court does not find that plaintiffs have stated a claim upon which relief may be granted by these allegations. First, the mere existence of Cotton, Inc. is not offensive government speech. In fact, plaintiffs concede that Cotton, Inc. is a "mechanism" and not speech. *See* Am. Compl. at para. 32; Pls.' Resp. at 11. Second, the Seal of Cotton is not a message that can be attributed to plaintiffs such that it impermissibly infringes upon their First Amendment rights. The Seal of Cotton is described as a "cotton boll with the word 'cotton'" on it. *See* Reply Mem. in Supp. of Def.-Intervenors' Mot. to Dismiss or, in the Alternative,

for J. on the Agency R. ("Intervenors' Reply") at 8.[5]  As pointed out by defendant-intervenors, this message is, "if anything, even less specific than the beef tagline." *Id*.  Given the Supreme Court's reasoning in *Livestock Marketing III*, this Court is constrained to find that the Seal of Cotton "is not sufficiently specific to convince a reasonable factfinder" that any particular cotton importer "would be tarred with the content of each trademarked ad." *Livestock Mktg. III*, 544 U.S. at __, 125 S. Ct. at 2065–66, 161 L. Ed. 2d at 910.

Another way in which the allegations contained in Count Three may be construed in plaintiffs' favor is that they are alleging that there are "some" promotional messages created pursuant to the Cotton Act (other than the Seal of Cotton) that they find offensive, and it is those messages that can be attributed to them.  In *Livestock Marketing III* the Supreme Court raised the possibility that an as-applied challenge to an agricultural promotion program might be sustained "if it were established . . . that individual beef advertisements were attributed to respondents." *Livestock Marketing III*, 544 U.S. at __, 125 S. Ct. at 2065, 161 L. Ed. 2d at 910.  The difficulty in the case at bar is simply that plaintiffs have not alleged any facts that "establish" that there are specific cotton advertisements that can be directly attributed to them as individuals.  In fact, plaintiffs admit that, even after amending their complaint to include an as-applied challenge to the Cotton Act, they are unaware of whether any infringing promotional messages actually exist.  *See* Pls.' Resp. at 10 (stating "[t]he answer to this question requires further factual development. . . .").  Thus, because plaintiffs have not alleged sufficient facts to establish that there are any specific promotional messages created pursuant to the Cotton Act that infringe upon their individual First Amendment

---

[5]      According to Cotton, Incorporated the Seal of Cotton is its registered trademark.  A graphic representation of the Seal of Cotton may be viewed at www.cottoninc.com (visited 4/24/06).

rights, plaintiffs do not meet the criteria set out in *Livestock Marketing III* and the Court must, therefore, dismiss Count Three of the Amended Complaint. *Nufarm*, 29 CIT at __, 398 F. Supp. 2d at 1342.[6]

## II

By Count Two of their Amended Complaint, plaintiffs challenge the constitutionality of the Cotton Act by alleging that it violates their right of Free Association. Plaintiffs allege that

> [t]he Act and regulations, and taxes imposed thereunder violate the right of Plaintiffs to freedom of association guaranteed by the First Amendment to the Constitution. Plaintiffs are forced against their will to associate with others in the industry in a common promotion scheme and message, research and education efforts, and the selection of the messenger. There is no compelling governmental interest justifying infringement upon that right. The government has not shown that the compelled association is necessary to achieve a compelling governmental interest, that the messages are ideologically neutral and that it has used the least restrictive means.

Am. Compl. at para. 30. As with Count One of their Amended Complaint, plaintiffs state that Count Two is a facial challenge to the Act. *See* Pls.' Resp. at 18 (captioning argument section as "The Speech Tax is Unconstitutional on its Face Because it Violates the Right of Free Association."). Thus, again, the question for the Court is whether plaintiffs have established that "no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745.

Plaintiffs present several arguments in support of their position that the Act infringes upon their right of Free Association. Plaintiffs first argue that they have properly stated a claim because

---

[6] Because the Court finds that plaintiffs have not alleged a cause of action upon which relief can be granted as to their allegation that the messages created pursuant to the Cotton Act can be attributed to them as individuals, the Court need not address plaintiffs' related allegation of whether the collection of assessments to fund those messages violates their constitutional rights.

"[m]ost government speech is not the product of compelled association among private competitors." Pls.' Resp. at 19. Plaintiffs contend that they "have a right not to associate with their competitors in matters of expression." *Id.* at 21 (citing *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000); *Hurley v. Irish-Am. Gay, Lesbian, and Bisexual Group of Boston, Inc.*, 515 U.S. 557 (1995); *Pacific Gas & Elec. Co. v. Pub. Util. Comm. of Cal.*, 475 U.S. 1 (1986)). Plaintiffs argue that they are compelled "to associate in the development of a common plan of marketing, research, and industry relations." *Id.* at 21. Plaintiffs state that they "must associate with their competitors to influence [various decisions of the Cotton Board] long before [those decisions] ever get to the point of Government approval." *Id.* at 21–22.

The Court does not agree that plaintiffs have adequately stated a claim upon which relief can be granted by Count Two. First, plaintiffs' arguments are not persuasive because, as pointed out by defendant, the collection of assessments pursuant to the Cotton Act "does not force plaintiffs to associate with any particular group or organization, and, as the Supreme Court made clear, there is no 'First Amendment right not to fund government speech.'" Def.'s Reply Mem. in Supp. of Its Mot. to Dismiss and Mot. for J. on the Agency R. of the Counts in Pls.' First Am. Class Action Compl. at 6.

Second, plaintiffs' position is not persuasive because the Cotton Act does not compel them to associate with anyone in the creation of promotional messages. The crux of plaintiffs' position is that they are compelled "against their will to associate with others in the industry in a common promotion scheme and message, research and education efforts, and the selection of the messenger." Am. Compl. at 30. Plaintiffs argue that this is so because "[t]he Act and Order unlawfully compel

Plaintiffs to associate in the development of a common plan of marketing, research, and industry relations." Pls.'s Resp. at 21. Plaintiffs argue that the cases they cite in support of their position "stand for the proposition that Plaintiffs have a right not to associate with their competitors in matters of expression." *Id*. The Court is not persuaded by plaintiffs' arguments for two reasons. First, a review of the statute and regulations shows that there is nothing in either the Cotton Act or the Cotton Order that compels plaintiffs to associate with their competitors in developing messages or programs. The relevant statutory provision provides that "the Cotton Board shall . . . develop and submit to the Secretary for his approval any advertising or sales promotion or research and development plans or projects." 7 U.S.C. § 2106(c). The Cotton Order further provides that the Cotton Board has the duty "[t]o review and submit to the Secretary any research and promotion plans or projects which have been developed and submitted to it by the contracting organization or association, together with its recommendations with respect to the approval thereof by the Secretary . . . ." 7 C.F.R. §1205.332(d). Plaintiffs nowhere allege that they are compelled to become members of the Cotton Board or of a "contracting organization" tasked with creating promotional messages. Second, any argument that plaintiffs are compelled to associate with their competitors through membership on the Cotton Board fails.[7] A review of the Cotton Act and Cotton Order shows that plaintiffs are neither required to become members of the Cotton Board nor is the Secretary of Agriculture authorized to seat unwilling cotton importers to that body. Thus, because plaintiffs have not established that they are compelled to associate with their competitors in

---

[7]     The Court understands this to be part of plaintiffs' argument as they cite to several sections of the Code of Federal Regulations that concern the composition, performance, and duties the Cotton Board.

developing messages and programs pursuant to the Cotton Act they have not established that "no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745. The Court, therefore, finds that "it appears beyond doubt that no set of facts can be proven that would entitle Plaintiff to relief," *Nufarm*, 29 CIT at __, 398 F. Supp. 2d at 1342, and dismisses Count Two of the Amended Complaint.

III

By Count Four of their Amended Complaint, plaintiffs allege that the actions of Congress in setting up the referendum vote and the 1991 referendum vote that vitiated the Cotton Act as to them violated their constitutional Due Process rights. Specifically, plaintiffs allege that "[t]he Act and Regulations, and taxes imposed thereunder violate [the] Due Process rights of Plaintiffs because Congress effectively delegated the decision whether to impose the tax on Plaintiffs to U.S. cotton producers," and the vote itself was improper because there was "a lack of meaningful and effective notice." Am. Compl. at para. 34.

The Court does not agree that, by Count Four, plaintiffs have stated a claim upon which relief can be granted. Specifically, plaintiffs brought this action pursuant to 28 U.S.C. § 1581(i).[8] As

---

[8]     Subsection 1581(i) of Title 28 provides, in relevant part:

[T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for –

(1)     revenue from imports or tonnage;

(2)     tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of

(continued...)

noted by defendant-intervenors, the statute of limitations for commencing an action pursuant to subsection 1581(i) is two years from the date of injury. *See* Intervenors' Reply at 15; 28 U.S.C. § 2636(i) ("A civil action of which the Court of International Trade has jurisdiction under 1581 of this title, other than an action specified in subsections (a)–(h) of this section, is barred unless commenced in accordance with the rules of this court within two years after the cause of action first accrues."); *Stone Container Corp. v. United States*, 229 F.3d 1345, 1348 (Fed. Cir. 2000) ("*Stone*"), *cert. denied*, 532 U.S. 971 (2001) ("The limitations period for suits brought under § 1581(i) is specified by 28 U.S.C. § 2636(i) . . . ."). Furthermore, statutes of limitations apply to injuries suffered due to unconstitutional acts. *Stone*, 229 F.3d at 1349–50. As stated by the Court of Appeals for the Federal Circuit when examining the constitutionality of section 1581(i) in the context of the Harbor Maintenance Tax cases, "the Supreme Court ruled . . . 'a constitutional claim can become time barred just as any other claim can.'" *Id.* at 1350 (quoting *Block v. N. Dak.*, 461 U.S. 273, 292 (1983)).[9] Here, there is no disagreement that the injuries complained of—the actions of Congress leading up to the referendum vote and the vote itself—occurred no later than July of 1991. *See, e.g.*, Def.'s Mem. at 18 (citing Cotton Research and Promotion Order Amendments; Order Directing That

---

[8](...continued)

> revenue; . . .
>
> (4)  administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

[9]      This is apparently so even though the Supreme Court provided no constitutional basis for its ruling. *See Block v. N. Dak.*, 461 U.S. at 292 (citing *Board of Regents v. Tomanio*, 446 U.S. 478 (1980); *Soriano v. United States*, 352 U.S. 270 (1957)). The Supreme Court merely concluded that a constitutional claim could become time barred because "[n]othing in the Constitution requires otherwise." *Id.*

a Referendum Be Conducted; Determination of Representative Period and Voter Eligibility, 56 Fed. Reg. 31,298 (Dep't Agric. July 9, 1991)). Thus, the injuries complained of by Count Four accrued some twelve years prior to the date this action was commenced—well outside the two-year statute of limitations for commencing an action to contest those injuries pursuant to subsection 1581(i). This being the case, plaintiffs are now barred from asserting that their Due Process rights were violated by those alleged injuries. *Stone*, 229 F.3d at 1350. While it may be that plaintiffs now still feel the effects of the actions complained of, they present no argument as to how any alleged violations of their Due Process rights in 1991 can today vest this Court with jurisdiction to consider those matters. Thus, because plaintiffs did not timely commence an action in this Court to contest whether their constitutional Due Process rights were violated, the Court, therefore, finds that "it appears beyond doubt that no set of facts can be proven that would entitle Plaintiff to relief," *Nufarm*, 29 CIT at __, 398 F. Supp. 2d at 1342, and dismisses Count Four of their Amended Complaint.

### *Conclusion*

For the reasons stated above, because the Court finds that plaintiffs have failed to state a claim upon which relief can be granted as to all Counts of their Amended Complaint, the Court dismisses this action.  Judgment shall enter accordingly.[10]

/s/ R. Kenton Musgrave

R. Kenton Musgrave

Dated: April 24, 2006
       New York, New York

---

[10]     Because the Court dismisses the Amended Complaint in its entirety, plaintiffs' pending motion for class action certification and defendant-intervenors' pending motion for oral argument are rendered moot.